**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Allan Baker,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　　Defendant. | No. CV-21-00606-PHX-JJT<br><br>**ORDER** |

At issue is the denial of Plaintiff Jeremy Allen Baker's Application for Disability Insurance Benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, "Pl.'s Br."), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 20, "Def.'s Br."), and Plaintiff's Reply (Doc. 22, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 16, R.) and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 11–29) as upheld by the Appeals Council (R. at 1–3).

**I.    BACKGROUND**

Plaintiff filed an application for Disability Insurance Benefits on January 18, 2019. for a period of disability beginning June 2, 2015. (R. at 14.) Plaintiff's claims were denied initially on June 5, 2019, and upon reconsideration on September 17, 2019. (R. at 14.) Plaintiff then appeared at a hearing held before an Administrative Law Judge on May 11,

2020. (R. at 14.) On June 24, 2020, the ALJ denied Plaintiff's Application. (R. at 11, 24.) On February 4, 2021, the Appeals Council denied a request for review of the ALJ's decision. (R. at 1–6.) On April 8, 2021, Plaintiff filed this action seeking judicial review of the denial. (Doc. 1.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. A limited summary of Plaintiff's relevant medical history as it relates to his mental impairments and seizures is set forth below.

The ALJ determined that Plaintiff had several mild, nonsevere mental impairments relating to (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) managing oneself. (R. at 17–18.) The ALJ based her finding on medical evidence, including evaluations and self-reports from Plaintiff. (R. at 17–18.) For example, Plaintiff stated in function reports collected in 2018 and 2019 that it is "difficult to concentrate, remember names and details, or complete conversations" and that he is unable to focus for more than 10 minutes at a time and needs his wife to "remind me I am doing a task." (R. at 263, 266.) A review of Plaintiff's medical visits also reveals memory disturbances. (R. at 523.) However, another doctor reported in 2018 that Plaintiff appeared to have "average to superior memory." (R. at 539.) In 2019, a psychologist also recorded Plaintiff as remembering 2 out of 3 words after a delay in a memory test. (R. at 611.) Notes from a 2020 telemedicine visit state he has "subjective and objective difficulties with short-term memory" without further detail. (R. at 774.) Nevertheless, Plaintiff has repeatedly presented himself as alert and socially appropriate throughout his evaluations and there is no record of significant deficits in his general cognition. (*See, e.g.*, R. at 370, 611.)

Opinions on the severity of Plaintiff's impairments are similarly varied. (R. at 18.) The ALJ considered the opinions of J. Huddleston, Ph.D. and E. Penner, Ph.D. indicating that Plaintiff had only mild mental impairments and found them to be persuasive. (R. at 18.) Dr. Huddleston, for instance, opined that Plaintiff was generally able to carry out simple to moderately complex instructions and maintain functional relationships with supervisors

and coworkers. (R. at 613.) In contrast, the ALJ found only somewhat persuasive the opinion of D. Gross, Ph.D. that Plaintiff had moderate impairments in all four areas. (R. at 18–19, 103.) The ALJ reasoned that Dr. Gross's opinion was not entirely consistent with the clinical findings and Plaintiff's own (largely unsupported) allegations of his limitations. (R. at 19.)

The ALJ also concluded that Plaintiff did not meet or equal Listing 11.02, which defines epilepsy. The ALJ based her finding on a lack of documentation showing that Plaintiff experiences tonic-clonic or dyscognitive seizures with the required frequency. (R. at 19.)

By way of background, Plaintiff initially reported a Traumatic Brain Injury ("TBI") from being struck by a soccer ball in the left temple in late 2014 and from falling in the shower sometime after that. (R. at 399.) However, a TBI screening in February 2015 was negative. (R. at 417.) Since that date, he has reported seizures of varying frequency, length, and effects. (R. at 20.) For example, he reported to the emergency room on November 9, 2015, for a possible seizure. (R. at 332.) In May 2019, he reported to the emergency room complaining of a syncopal episode where he lost consciousness but denied having a seizure. (R. at 585.) In July 2019, he reported to the emergency room again, complaining of a "nonepileptic seizure." (R. at 673.) At the hearing, he testified that he had both epileptic and nonepileptic seizures. (R. at 38.)

On several occasions, these seizures have been observed by treating or examining medical personnel. In 2017, a nurse observed four occurrences where Plaintiff's head would "slump forward" and he would close his eyes for 10–20 seconds at a time. (R. at 396.) When Plaintiff was being evaluated in 2018, he said that he was about to "have an episode" and slumped forward for about 15 seconds. (R. at 580.) On both occasions he regained consciousness with no trouble and was alert and "neurologically intact immediately thereafter." (R. at 396, 580.)

Plaintiff has had electroencephalograms ("EEGs"), computerized tomography ("CT") scans, and other tests diagnosing his reported seizures as pseudoseizures or

psychogenic seizures[1] having a psychological rather than physical origin. In 2016, an EEG was recorded as a "normal awake and drowsy EEG… suggestive of pseudoseizure." (R. at 358.) However, in 2019, an EEG assessed by Dr. Woods revealed epileptiform discharges and "increased epileptogenic activity." (R. at 733.) Dr. Woods eventually diagnosed Plaintiff with "psychogenic nonepileptic seizure" and a seizure disorder. (R. at 750.) He has been treated for this condition with varying results. (R. at 750, 772, 791.)

## II.     LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of

---

[1] The parties have noted that magnetic resonance imaging and other scans have revealed an "old hemorrhage and developmental venous anomaly." (R. at 406, *see also* R. at 438.)

- 4 -

impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's Residual Functional Capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

## III.  ANALYSIS

The Plaintiff raises two arguments for the Court's consideration. First, Plaintiff contends that, because the ALJ failed to include Plaintiff's nonsevere mental impairments in her formulation of Plaintiff's RFC, the hypotheticals posed to the vocational expert were incomplete and thus the ALJ erred in her ultimate findings. (Pl.'s Br. at 1, 16.) Second, Plaintiff argues that the ALJ failed to provide sufficient analysis as to why he does not meet the Listing 11.02 criteria for epilepsy. (Pl.'s Br. at 1.) The Court will address each argument in turn.

### A.  The ALJ Considered Plaintiff's Nonsevere Mild Impairments in Assessing his RFC and Was Not Required to Incorporate Them

Plaintiff argues the ALJ committed harmful error because she determined he had mild limitations at step two of the five-step process, but failed to incorporate those limitations into his RFC. (Pl.'s Br. at 1.) The ALJ did not err because she assessed Plaintiff's nonsevere mild limitations as having minimal impact on his ability to work and considered his mild limitations in calculating Plaintiff's RFC. (R. at 18, 22.)

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). When formulating the claimant's RFC, the ALJ will consider the "limiting effects of all [the claimant's] impairments, including those that are not severe." *Id.* § 404.1545(e). A nonsevere impairment is one that has no more than a minimal limitation on a claimant's ability to do basic work activities. *Id.* § 416.1522(a). The ALJ

cannot merely disregard mild impairments in the assessment of claimant's RFC. *Hutton v. Astrue*, 491 F. App'x 850, 851 (9th Cir. 2012). However, such limitations need only be considered in the RFC, not included. *See, e.g., Janet Margaret G. v. Saul*, No. CV 19-5095-KS, 2020 WL 2039944 (C.D. Cal. Apr. 27, 2020) (gathering cases distinguishing the requirement to *consider* mild limitations from the the nonexistent requirement to *incorporate* such limitations into the plaintiff's RFC).

The ALJ's reasoning must be sufficient to allow "meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). However, the ALJ need not discuss all their reasoning at each step in the five-step test and may incorporate reasoning from other steps by reference. *See Webb v. Colvin*, No. 2:12-CV-00592-GMN, 2013 WL 5947771 at *12 (D. Nev. Nov. 5, 2013).

Plaintiff's argument fails because the ALJ considered his mild limitations in determining his RFC and provided her underlying reasoning. At step two of the five-step process, the ALJ determined that Plaintiff's mild impairments create a "minimal limitation in the claimant's ability to do work related activities." (R. at 18.) One paragraph later, the ALJ indicated that her reasoning at step two was incorporated into her calculation of Plaintiff's RFC, stating that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."[2] (R. at 18.) Further, in the ALJ's discussion of Plaintiff's RFC, she acknowledges that he has reported "difficulty… remembering, completing tasks, concentrating, understanding, following instructions, and getting along with others." (R. at 19.) The ALJ considered Plaintiff's limitations in determining his RFC in a manner that allowed for "meaningful review" and thus did not err. *Brown-Hunter*, 806 F.3d at 492

Because the ALJ properly considered Plaintiff's mild limitations in determining his RFC, the hypotheticals she posed to the vocational expert were "supported by substantial

---

[2] In *Ball v. Colvin* this exact same language was the subject of an identical challenge that the ALJ failed to adequately consider mild limitations from step two in the ALJ's assessment of the plaintiff's RFC. No. CV 14-2110-DFM, 2015 WL 2345652 at *2 (C.D. Cal. May 15, 2015). The court there found that this language was sufficient, as this Court does here. *Id.* at *3.

- 6 -

evidence in the record and reflecting all the claimant's limitations." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012). The ALJ did not err.

### B. The ALJ Provided Adequate Analysis at to Why Plaintiff Does Not Meet or Equal Listing 11.02's Definition of Epilepsy

Plaintiff argues that the ALJ failed to provide any analysis as to why he did not meet or equal Listing 11.02's definition of epilepsy, nor consider any evidence in the record that shows that he meets the frequency requirements of the listing. (Pl.'s Br. at 16–17.) Because the ALJ reviewed Plaintiff's medical history—which revealed no medical findings of tonic-clonic or dyscognitive seizures as required—in assessing his RFC, her analysis was adequate.

Plaintiff claims to equal Listing 11.02, epilepsy. (R. at 16.) Epilepsy is defined in as "generalized tonic-clonic seizures" occurring at least once a month for three months, or at least once every two months for four months in combination with mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02, A–B. Alternatively, dyscognitive seizures occurring at least once a week for three months will satisfy requirements of Listing 11.02. *Id.* at 11.02 C. However, psychogenic seizures or pseudoseizures are insufficient. *Id.* at 11.00H.

If a claimant has "an impairment that meets or equals" a listing, the ALJ must find them to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). To medically equal a listing an impairment must be "equal in severity and duration" to that listing. *Id.* § 404.1526(a). A claimant must "present medical findings equal in severity to all the criteria for the one most similar listed impairment" to equal that listing. *Kennedy v. Colvin*, 738 F.3d 1172, 1174 (9th Cir. 2013). Listed impairments are intentionally severe because they create a presumption of disability that ends the ALJ's inquiry. *Id.* at 1176.

In concluding that the claimant's impairment does or does not meet or equal a listing, the ALJ need only make findings essential to her conclusion. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). The ALJ need not repeat her analysis in each step of the five-step process and may incorporate analysis from one step into another step. *See*

*Vandiver v. Colvin*, No. 215CV00886GMNNJK, 2016 WL 8787118 (D. Nev. June 27, 2016), *report and recommendation adopted sub nom. Vandiver v. Berryhill*, No. 215CV00886GMNNJK, 2017 WL 1424901 (D. Nev. Apr. 20, 2017).

The ALJ provided a sufficient rationale for her finding that Plaintiff did not meet or equal Listing 11.02. Plaintiff incorrectly asserts that the ALJ "explained there was no documentation showing plaintiff met the *frequency* requirements." (Pl.'s Br. at 17.) This is not accurate. Instead, the ALJ found that "there is no documentation showing that the claimant experiences generalized *tonic-clonic* seizures… or *dyscognitive* seizures" with the required frequency. (R. at 19.) The ALJ's focus here is on the type of seizure that Plaintiff experienced, not the frequency.

Further, the ALJ reviewed medical findings relating to Plaintiff's seizures in her determination of his RFC. (R. at 20.) Medical findings indicate that he has not experienced anything other than pseudoseizures or psychogenic seizures.[3] (R. at 20.) Nor does Plaintiff point to any evidence to the contrary. (*See generally* Pl.'s Br.; Reply.) Psychogenic seizures will not suffice for the purposes of Listing 11.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H. While the Court understands that Plaintiff may be experiencing troubling symptoms, there is no error in the ALJ's finding that Plaintiff's symptoms do not "meet or equal" Listing 11.02, nor is there a deficiency in her analysis.

## IV.   CONCLUSION

Substantial evidence supports the ALJ's nondisability determination. The ALJ considered—and was not required to incorporate—Plaintiff's mild mental limitations in formulating his RFC. The ALJ did not err in determining that Plaintiff did not meet or equal Listing 11.02 based on the lack of evidence that Plaintiff had tonic-clonic or

---

[3] The ALJ notes that an October 2019 EEG assessed by Dr. Woods revealed "epileptogenic potential." (R. at 733.) Dr. Woods later diagnosed Plaintiff with a psychogenic seizure disorder. (R. at 750, 752.) Of note, Plaintiff has not argued that his psychogenic or pseudoseizures are of sufficient severity to equal Listing 11.02. (*See generally* Pl.'s Br.; Reply.) Nor is it clear that such seizures, no matter how severe, could equal Listing 11.02 given that 11.00H states that they are not seizures for the purposes of Listing 11.02. 20 C.F.R. Pt. 404, Subpt. P, App. 1, 11.00H.

dyscognitive seizures and her review of the medical record pertaining to Plaintiff's reported seizures. Thus, the Court affirms the ALJ's decision.

**IT IS THEREFORE ORDERED** affirming the June 24, 2020 decision of the Administrative Law Judge (R. at 11–29), as upheld by the Appeals Council (R. at 1–3).

**IT IS FURTHER ORDERED** directing the Clerk of court to enter final judgment consistent with this Order and close this case.

Dated this 25th day of July, 2022.

Honorable John J. Tuchi
United States District Judge